**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JAMES S. PAVLICHKO, SR.,** <br> **DK1099** <br> **SCI Mahanoy** <br> **301 Morea Road** <br> **Frackville, PA 17932,** <br><br> **as guardian ad litem for a Minor Child,** <br> **JAMES S. PAVLICHKO, JR.,** <br><br>     **Plaintiff,** <br><br>     **vs.** <br><br> **GLEN MILLS SCHOOL,** <br> **Glen Mills Road** <br> **Concordville, PA 19331,** <br><br>     **and** <br><br> **COSIMO D. FERRAINOLA, DIRECTOR,** <br> **Glen Mills School** <br> **Glen Mills Road** <br> **Concordville, PA 19331,** <br><br>     **and** <br><br> **LARRY LAURENCE, COUNSELOR,** <br> **Glen Mills School** <br> **Glen Mills Road** <br> **Concordville, PA 19331,** <br><br>     **and** <br><br> **GREG FRAZIER, STAFF MEMBER,** <br> **Glen Mills School** <br> **Glen Mills Road** <br> **Concordville, PA 19331,** <br><br>     **and** <br><br> **JIM WELSH, STAFF MEMBER,** <br> **Glen Mills School** <br> **Glen Mills Road** <br> **Concordville, PA 19331,** | **Civil Action No. 02-CV-2889** |

**and**

**TODD DONAHUE, STAFF MEMBER,**
**Glen Mills School**
**Glen Mills Road**
**Concordville, PA 19331,**

    **and**

**T.J. GREEN, STAFF MEMBER,**
**Glen Mills School**
**Glen Mills Road**
**Concordville, PA 19331,**

    **and**

**MR. YANEZ, STAFF MEMBER,**
**Glen Mills School**
**Glen Mills Road**
**Concordville, PA 19331,**

    **Defendants.**

## AMENDED COMPLAINT

Plaintiff James S. Pavlichko, Sr., as guardian ad litem for a minor child, James S. Pavlichko, Jr., by and through his undersigned counsel, for his Amended Complaint against defendants Glen Mills School, Cosimo D. Ferrainola, Larry Laurence, Greg Frazier, Jim Welsh, Todd Donahue, T.J. Green and Mr. Yanez, states as follows:

### PARTIES

**Plaintiff**

1.    James S. Pavlichko, Sr. ("Plaintiff") is an adult individual currently incarcerated at the State Correctional Institution at Mahonoy, 301 Morea Road, Frackville, Pennsylvania.

2.    James S. Pavlichko, Jr. ("James") is a Minor Child, seventeen (17) years of age. Prior to the events described below, James was adjudicated a delinquent by the

Juvenile Court of Luzerne County, Pennsylvania.  Currently, James is committed to the Northwestern Academy, Coal Township, Pennsylvania.

3.      Plaintiff is the natural father of James.  On or about July 9, 2002, this Court entered an Order appointing Plaintiff as guardian ad litem for James in this action.

**<u>Defendants</u>**

4.      Upon information and belief, defendant Glen Mills School ("Glen Mills") is a Pennsylvania not-for-profit corporation with its principal place of business at Glen Mills Road, Concordville, Pennsylvania.

5.      Upon information and belief, defendant Cosimo D. Ferrainola ("Ferrainola") is the Executive Director of Glen Mills and a resident of Pennsylvania.

6.      Upon information and belief, defendant Larry Laurence ("Laurence") is a counselor employed by Glen Mills and a resident of Pennsylvania.

7.      Upon information and belief, defendant Greg Frazier ("Frazier") an employee of Glen Mills and a resident of Pennsylvania.

8.      Upon information and belief, defendant Jim Welsh ("Welsh") is an employee of Glen Mills and a resident of Pennsylvania.

9.      Upon information and belief, defendant Todd Donahue ("Donahue") an employee of Glen Mills and a resident of Pennsylvania.

10.      Upon information and belief, defendant T.J. Green ("Green") is an employee of Glen Mills and a resident of Pennsylvania.

11.      Upon information and belief, defendant Mr. Yanez ("Yanez") is an employee of Glen Mills and a resident of Pennsylvania.

**JURISDICTION AND VENUE**

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343 and 1367, as this is an action: (a) arising under the Constitution, laws, or treaties of the United States; (b) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; (c) to recover damages or other relief under any Act of Congress providing for the protection of civil rights; and (d) involving claims that are so related to claims in this action otherwise within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.

13.     Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391(b), as: (a) some or all of the defendants reside in the Commonwealth of Pennsylvania, and some or all of the defendants reside within the Eastern District of Pennsylvania; and (b) a substantial part of the events or omissions giving rise to the claims set forth herein occurred within the Eastern District of Pennsylvania.

**FACTUAL BACKGROUND**

**<u>Glen Mills School</u>**

14.     Glen Mills is a private facility whose students are juveniles who have been adjudicated delinquent by various local courts throughout Pennsylvania and committed to Glen Mills.  Glen Mills contracts with local municipalities throughout the Commonwealth and accepts those juveniles whom the courts commit to it.

15.     Glen Mills assumes responsibility on behalf of such municipalities for the confinement, correction, treatment and rehabilitation of the juveniles committed to it.

16.    As such, Glen Mills performs a function – the treatment of adjudicated juvenile delinquents – that states have traditionally performed and for which they have traditionally taken responsibility.

17.    Upon information and belief, on numerous prior occasions, Glen Mills and its employees have engaged in physical abuse of juveniles committed to it.

**James's Placement and Initial Treatment at Glen Mills**

18.    Prior to March 2002, James was adjudicated delinquent by the Juvenile Court of Luzerne County.  That court committed James to the custody of Glen Mills pursuant to a contract between Luzerne County and Glen Mills.

19.    Prior to the events described below, James had at all times maintained good behavior and received numerous privileges while committed to Glen Mills.

20.    Glen Mills had a policy that, when one of its juveniles saw another committing a violation of its rules, the first juvenile was, at least initially, to confront the second in an effort to correct the second's behavior.

21.    One night, in late March or early April 2002, James was in his bed after lights out when he heard another juvenile listening to a radio in bed.  Such behavior was in violation of Glen Mills's rules, as James knew.

22.    In an effort to comply with Glen Mills's rule that juveniles should confront other juveniles whom they observed violating Glen Mills's rules, James left his bed to ask the other juvenile to turn his radio off.

23.    While James was out of his bed confronting the other juvenile, James encountered defendant Green.

24.    Defendant Green made no effort to determine what James was doing or why he was out of his bed.  Rather, defendant Green grabbed James by his shirt and then slammed him into a wall.

**Plaintiff's Complaints and Requests for Investigation**

25.    On or about April 16, 2002, Plaintiff sent a letter to defendant Ferrainola.  In the letter, Plaintiff informed defendant Ferrainola of the physical abuse and assault of James.  Plaintiff further requested that defendant Ferrainola, Glen Mills and its employees not engage in retaliatory conduct against James because of Plaintiff's inquiring about and requesting an investigation of James's treatment.  A true and correct copy of the letter is attached hereto as Exhibit A.

26.    At the same time, Plaintiff sent a copy of the letter to, inter alia, the Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania, the Commissioner of State Police, and the Office of the Attorney General.  Plaintiff asked that these officials and their agencies investigate the treatment and abuse of James and other children at Glen Mills.

**Retaliation Against James**

27.    In retaliation for Plaintiff's requesting that various state officials investigate the abuse James suffered at Glen Mills, defendants Ferainola, Laurence and Yanzez contacted the Probation Department of the Juvenile Court of Luzerne County and requested the James be removed from Glen Mills.

28.    In retaliation for Plaintiff's requesting that various state officials investigate the abuse James suffered at Glen Mills, defendant Ferrainola directed defendant Welsh to remove James's "Bull Status."  "Bull Status" is a rating assigned by Glen Mills to juveniles for good behavior while committed there.  A juvenile who has

"Bull Status" is entitled to passes for home visits and greater freedom generally. Removal of "Bull Status" results in a significant restriction on a juvenile's rights and privileges.

29.     In retaliation for Plaintiff's requesting that various state officials investigate the abuse James suffered at Glen Mills, defendant Donahue removed James's home pass status, preventing him from leaving Glen Mills to visit his home.

30.     In retaliation for Plaintiff's requesting that various state officials investigate the abuse James suffered at Glen Mills, defendant Laurence ordered that James be moved from his then-current location at Glen Mills to Tyler Hall.  Tyler Hall affords juveniles assigned there significantly fewer rights and privileges than those assigned to James's prior residence.

31.     In retaliation for Plaintiff's requesting that various state officials investigate the abuse James suffered at Glen Mills, defendant Laurence threatened to give an unfavorable recommendation concerning James to the Judge of the Juvenile Court of Luzerne County assigned to James's case at his next Placement Review Hearing.

32.     On or about April 16, 2002, Plaintiff mailed a copy of the letter described above, as well as other documents, to James.

33.     Upon receipt of the letter and other documents at Glen Mills, on or about April 18, 2002, defendant Frazier permitted James to read the letter and other documents, but then immediately seized and confiscated them.  Defendant Frazier did so in retaliation for Plaintiff's requesting that various state officials investigate the abuse James suffered at Glen Mills.

34.    On or about April 28, 2002, James's mother, Veronica L. Pavlichko, and grandmother went to Glen Mills to visit him.  At that time, defendants Ferrainola and Laurence directed that, unlike other visits, a staff member and another juvenile committed to Glen Mills be present during James's visit with his mother and grandmother.  This was done in retaliation for Plaintiff's requesting that various state officials investigate the abuse James suffered at Glen Mills.

35.    On or about May 2, 2002, Plaintiff sent a letter to defendant Ferrainola concerning the defendants' reading and confiscation of James's mail.  Plaintiff informed defendant Ferrainola that such actions were improper and asked him, Glen Mills and its employees to cease and desist from such actions.  A true and correct copy of this letter is attached hereto as Exhibit B.

36.    On or about May 3, 2002, Plaintiff sent a letter to defendant Ferrainola concerning the defendants' other retaliatory behavior.  Plaintiff informed defendant Ferrainola that such actions were improper and asked him, Glen Mills and its employees to cease and desist from such actions.  A true and correct copy of this letter is attached hereto as Exhibit C.

**James's Placement Review Hearing**

37.    As a result of James's treatment at Glen Mills, Plaintiff and James's mother filed a Motion to Modify and/or Vacate Child Placement Decree (the "Motion") in the Juvenile Court of Luzerne County.  In the Motion, Plaintiff and James's mother sought a Placement Review Hearing and the release of James from Glen Mills to the custody of his mother.  Plaintiff and James's mother did so because of their fear for James's safety and that he might suffer further abuse while at Glen Mills.

38.     A Placement Review Hearing (the "Hearing") was ultimately scheduled in the Juvenile Court for June 17, 2002, before the Honorable Mark A. Ciavarella.

39.     Prior to the Hearing, on or about May 27, 2002, James wrote to Judge Ciavarella to request that counsel be appointed to represent his interests at the hearing.

40.     Although James requested appointment of counsel prior to the Hearing, neither before nor at the Hearing was counsel appointed for him.

41.     The Hearing was held on June 17, 2002.

42.     Defendant Yanez appeared at the hearing.  In retaliation for Plaintiff's requesting that various state officials investigate the abuse James suffered at Glen Mills, defendant Yanez made an unfavorable recommendation to Judge Ciavarella concerning James's placement.  Defendant Yanez also informed Judge Ciavarella of, inter alia, Plaintiff's requesting various state officials to investigate the abuse James suffered at Glen Mills.

43.     Upon information and belief, Judge Ciavarella denied counsel to James and denied other interested parties – including James's mother and grandparents – the opportunity to be heard or offer any materials concerning James's character, behavior and rehabilitation, because of Plaintiff's requesting various state officials to investigate the abuse James suffered at Glen Mills.

44.     Furthermore, in agreement with and reliance on defendant Yanez's recommendation, and with knowledge and intent that such recommendation was in response to Plaintiff's requesting that various state officials investigate the abuse James suffered at Glen Mills, Judge Ciavarella removed James from Glen Mills and remanded him to the custody of the Luzerne County Detention Facility.

45.     The Luzerne County Detention Facility is a substantially more restrictive and generally less favorable environment for juveniles who have been adjudicated delinquent than Glen Mills.

46.     Subsequent to the hearing, Judge Ciavarella, in agreement with and in reliance on defendant Yanez's recommendation, and with knowledge and intent that such recommendation was in response to Plaintiff's requesting that various state officials investigate the abuse James suffered at Glen Mills, placed James at the Vision Quest Boot Camp.

47.     The Vision Quest Boot Camp is a substantially more restrictive and generally less favorable environment for juveniles who have been adjudicated delinquent than Glen Mills.

<u>COUNT I</u>
42 U.S.C. § 1983 – RETALIATION
(Defendants Glen Mills School, Cosimo D. Ferrainola,
Larry Laurence, Greg Frazier, Jim Welsh, Todd
Donahue, T.J. Green and Mr. Yanez)

48.     Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Amended Complaint.

49.     Plaintiff's contacting the Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania, the Commissioner of State Police, and the Office of the Attorney General, among other officials, and requesting that they investigate defendant's treatment and abuse of James was constitutionally protected conduct.

50.     As described above, James suffered adverse actions at the hands of the defendants.

51.     Plaintiff's constitutionally protected conduct was a substantial and motivating factor in defendants' adverse treatment of James.

52.     In taking such adverse actions, defendants were acting under color of law.

53.     As a result of such adverse actions, James suffered damages.

54.     Each of the defendant's above-described conduct was motivated by an evil motive and intent, and involved reckless or callous indifference to the federally protected rights of Plaintiff and James.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants Glen Mills, Ferrainola, Laurence, Frazier, Welsh, Donahue, Green and Yanez for compensatory damages, for punitive damages, for delay damages, for prejudgment interest, for attorney's fees, for costs of suit, and for such other relief as the Court may deem appropriate.

## COUNT II
### 42 U.S.C. § 1983 – CONSPIRACY
**(Defendants Glen Mills School, Cosimo D. Ferrainola,
Larry Laurence, Greg Frazier, Jim Welsh, Todd
Donahue, T.J. Green and Mr. Yanez)**

55.     Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Amended Complaint.

56.     Plaintiff's contacting the Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania, the Commissioner of State Police, and the Office of the Attorney General, among other officials, and requesting that they investigate defendant's treatment and abuse of James was constitutionally protected conduct.

57.     Defendants conspired and agreed with Judge Ciavarella to undertake adverse actions against James, as described above, in retaliation for Plaintiff's constitutionally protected conduct.

58.     Defendants and Judge Ciavarella in fact took adverse actions against James, as described above.

59.    Plaintiff's constitutionally protected conduct was a substantial and motivating factor in such adverse actions.

60.    As a result of such adverse actions, James suffered damages.

61.    Each of the defendant's above-described conduct was motivated by an evil motive and intent, and involved reckless or callous indifference to the federally protected rights of Plaintiff and James.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants Glen Mills, Ferrainola, Laurence, Frazier, Welsh, Donahue, Green and Yanez for compensatory damages, for punitive damages, for delay damages, for prejudgment interest, for attorney's fees, for costs of suit, and for such other relief as the Court may deem appropriate.

## COUNT III
### 42 U.S.C. § 1983 – EIGHTH AMENDMENT
### (Defendants T.J. Green)

62.    Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Amended Complaint.

63.    As described above, defendant Green used physical force on James.

64.    Defendant Green's use of force was unreasonably excessive and not necessary to maintain or restore discipline at Glen Mills.

65.    Defendant Green used force on James in a malicious and sadistic effort to injure him.

66.    In using force on James, defendant Green was acting under color of law.

67.    As a result of defendant Green's use of force, James suffered injuries and damages.

68.     Defendant Green's use of force on James was motivated by an evil motive and intent, and involved reckless or callous indifference to the federally protected rights of Plaintiff and James.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant Green for compensatory damages, for punitive damages, for delay damages, for prejudgment interest, for attorney's fees, for costs of suit, and for such other relief as the Court may deem appropriate.

### COUNT IV
### ASSAULT
### (Defendant T.J. Green)

69.     Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Amended Complaint.

70.     As described above, defendant Green intended to cause a harmful or offensive contact with James and put James in an imminent apprehension of such a contact.

71.     As a result of defendant Green's actions, James was put in an imminent apprehension of harmful and offensive contact.

72.     James did not consent to defendant Green's touching him.

73.     Defendant Green had no excuse or justification for touching or causing apprehension of harmful and offensive contact to James.

74.     As a result of being put in such apprehension, James suffered damages.

75.     Defendant Green's above-described actions were outrageous, intentional, malicious, willful, in bad faith, and were engaged in for the purpose of injuring James.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant Green for compensatory damages, for punitive damages, for delay damages, for

prejudgment interest, for costs of suit and attorney's fees, and for such other relief as the Court may deem appropriate.

## COUNT V
### BATTERY
### (Defendant T.J. Green)

76.     Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Amended Complaint.

77.     As described above, defendant Green touched James in a harmful and offensive manner.

78.     Defendant Green intended to touch James in a harmful and offensive manner.

79.     James did not consent to defendant Green's touching him.

80.     Defendant Green had no excuse or justification for touching James.

81.     As a result of such harmful and offensive contact, James suffered damages.

82.     Defendant Green's above-described actions were outrageous, intentional, malicious, willful, in bad faith, and were engaged in for the purpose of injuring James.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant Green for compensatory damages, for punitive damages, for delay damages, for prejudgment interest, for costs of suit and attorney's fees, and for such other relief as the Court may deem appropriate.

## COUNT VI
### ASSAULT & BATTERY - RESPONDEAT SUPERIOR
### (Defendants Glen Mills School and Cosimo D. Ferrainola)

83.     Plaintiff incorporates herein by reference the allegations of the preceding paragraphs of this Amended Complaint.

14

84.    Defendant Glen Mills employs defendant Green.

85.    Defendant Ferrainola supervises defendant Green.

86.    Defendant Green committed the above-described actions against, and caused harm and damages to, James in the course of his duties as an employee of Defendant Glen Mills and subject to the supervision of Defendant Ferrainola.

87.    Defendants Glen Mills and Ferrainola had the right to select defendant Green to perform duties on their behalf in the course of which he committed the acts described above.

88.    Defendants Glen Mills and Ferrainola had the right to direct the mode of performance of defendant Green's duties, and to so control him in his acts in the course of his rendition of his duties, as to prevent injury to others, such as James.

89.    Accordingly, defendants Glen Mills and Ferrainola are liable to James for any damages he suffered as a result of defendant Green's conduct.

90.    Defendant Glen Mills's and Ferrainola's above-described actions were outrageous, intentional, malicious, willful, in bad faith, and were engaged in for the purpose of injuring James.

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants Glen Mills and Ferrainola for compensatory damages, for punitive damages, for delay damages, for prejudgment interest, for costs of suit and attorney's fees, and for such other relief as the Court may deem appropriate.

HANGLEY  ARONCHICK SEGAL & PUDLIN

Dated:   December 24, 2002          BY:_____/s/_____
                                    Bruce S. Haines (Atty. I.D. No. 36827)
                                    Kathleen M. Laubenstein (Atty. I.D. No. 79941)
                                    Matthew A. Hamermesh (Atty. I.D. No. 82313)
                                    One Logan Square, 27th Floor
                                    Philadelphia, PA 19103
                                    Telephone: (215) 568-6200
                                    Facsimile: (215) 568-0300

                                    Counsel for Plaintiff

**EXHIBIT A**

J A M E S   S.   P, A V L I C H K O,   SR.

Box 244, Rt. 29, DK0199

Graterford, Pennsylvania 19426

_____

April 16, 2002

Superintendent/Director
Glen Mills School
Glen Mills Road
Concordville, PA  19331

       RE: ENCLOSED "NOTICE OF INTENTION"
          Minor: JAMES S. PAVLICHKO, JR.
          DOB: 6-3-85, SSN: 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
          PAVLICHKO VS. GLEN MILLS SCHOOL

Dear Superintendent/Director:

    Enclosed herein you will find a legal Notice of Intention, regarding prospective litigation agianst your institution and staff thereof.
    I am the natural father of the above individual, who is currently under your control and custody.
    I have received information that he is being mistreated by staff, including vulgar verbal abuse, with outright threats of physical abuse. I submit this conduct is unacceptable, inappropriate, unlawful as well as clearly unconstitutional. It has come to my attention that staff at your institution are physically abusing the children under their care and custody, and verbal abuse is an ongoing practice. This type of conduct will not be tolerated where my son is subject to such conditions.
    Amply, I have been informed that staff, by practice, push and shove children around, I submit this constitutes the offense of Simple, possibly Aggravated Assault, and Official Oppression as defined by the Pennsylvania Crimes Code.
    I make my objection known very clear to you and your facility, its staff are not to lay a hand on my son, or abuse him in any manner, this includes verbal abuse which he has been undergoing by staff since placed in your institution.
    Furthermore, any retaliation, punishment, or harasment by your staff toward my son for pursuing litigation in the U.S. District Court will be handled immediately, via, court injunction, temporary restraining order prohibiting your staff from such conduct for my son exercising his First Amendment right of access to the courts.
    As the parent, and natural father of the child, under the laws of this Commonwealth, I specifically object to any interrogation of my son regarding the allegations made in the suit, unless counsel is present of his choice.
    If these matters cannot be addressed and corrected forthwith, and my son continues to be verbally, and/or physically abused by staff of your facility, I will forthwith file a formal Civil Rights Complaint with the United States District Court For The Eastern District of Pennsylvania seeking appropriate relief on his behalf, and all other children in your custody suffering such abuse.

Superintendent/Director
Glen Mills School
April 16, 2002
Page Two


        Should my son be denied home passes, telephone calls, visits or the
like, including a favorable recommendation for his June 2002 Review, it
will be deemed an act of retaliation for him pursuing the enclosed civil
complaint, and I will seek immediate relief from the Court, via, injunction
mandating his release back into the custody of his natural mother, Veronica
Pavlichko. I take abuse of children very seriously, and I will pursue these
matters of abuse thru the court, formal complaint with the Pa. State Police
as well as the Pa. Dept. of Welfare.
        I thank you for your time and cooperation in this matter of great
interests and welfare of the children you house in you facility. I await
your response and findings, and/or corrective action. Should I not hear from
you, I will assume that I must proceed by other means as stated above and
in the attached legal notice. I await your response. Should you have any questions,
do not hesitate to contact me at your earliest conveneince.



Sincerely,



JAMES S. PAVLICHKO, SR.


JSP/tbs



enclosure: NOTICE OF INTENTION


cc: JAMES STEPHEN PAVLICHKO, JR.
    THEODORE B. SAVAGE, JD., Counselor-at-Law
    Honorable Mark A. Ciavarella
    Pa. State Police
    Pa. Dept. of Welfare
    File X2

**EXHIBIT B**

J A M E S   S.   P A V L I C H K O,   SR.

SCI-Graterford, #DK-0199
Box 244, Route 29
Graterford, Pennsylvania 19426

---

May 2, 2002

Mr. Farrainola, Superintendent
Glen Mills School
Glen Mills Road
Concordville, PA 19331

      RE: JAMES S. PAVLICHKO, JR.
          CONFISCATION OF LEGAL MAIL/MATERIAL

Dear Mr. Farrainola:

    I type you this letter concerning the above minor child, who is currently placed at your school, for whom I am the natural father.
    My son has brought to my attention, that legal mail, and legal material addressed to him is being seized and confiscated, and he is not being permitted to retain such legal material, rather it is being placed in some file of his.
    I hereby place you on notice it is both illegal and unconstitutional for staff of your facility to seize and confiscate legal papers that are sent to my son, and to the contrary, he is guaranteed the right to retain such legal material in his possession. Not only is such privileged legal material being seized, it is being read by staff, which is also unconstitution. See: WRIGHT VS. NEWSOME, 795 F.2d 964, 968 (1986); HALL, VS. SUTTON, 755 F.2d 786 (1985); RENEER VS. SEWELL, 975 F.2d 258 (1992); CHINCHELLO VS. FENTON, 763 F. Supp. 793 M.D. Pa. 1991)(privileged mail is entitled to confidentiality and freedom from censorship, privileged mail may not be read or seized, except in emergencies, officials must obtain a warrant based on probably cause  to read or confiscate legal mail or legal material); also see: GUAJARDO VS. ESTELLE, 580 F.2d  at 759.
    Should you be an individual unlearned in law, I suggest you contact your attorney or solicitor regarding this matter immediately, as you will be explaining this unconstitutional confiscation of legal material, and reading of legal material to a federal Judge in the very near future, as such suit will be filed with the U.S. District Court For The Eastern District of Pennsylvania within the next week or two.
    Amply, demand is hereby made that all legal papers seized from my son by staff of your facility immediately return same to him, and allowing him to retain same, as is constitutionally guaranteed. Legal material cannot be read by your staff, cannot be seized by your staff, nor can it be photo copied, as such is privileged as a matter of law.
    I thank you for your time and attention in this very important matter. Should you have any questions, contact your attorney.

Sincerely,

*James S. Pavlichko Sr.*

JAMES S. PAVLICHKO, SR.

JSP/

**EXHIBIT C**

J A M E S   S.   P A V L I C H K O,   SR.

SCI-Graterford, #DK-0199
Box 244, Route 29
Graterford, Pennsylvania 19426

May 3, 2002

Mr. Larry Laurence, Counselor
Glen Mills School
Glen Mills Road
Concordville, PA 19331

RE: JAMES S. PAVLICHKO, JR.
    DOB: 6-3-85; SSN: 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

Dear Mr. Laurence:

     I type you this letter concerning the above child, for which I am the
natural/biological father.

     As you may be aware, Glen Mills School was put on notice of the
intent to commence a civil action for mistreatment of my son, as well as
other children under that institutions custody and care. Such notice was
very clear that any retaliation against my son for pursuing legal action
would not be tolerated, and an appropriate court injunction would be sought,
should such retaliation, harassment or punishment take place for my son
complaining to me or the courts about the treatment of him or other children
there.

     I have been advised, that since our Notice of Intent was served, that
institution has began a pattern and practice of retaliating and punishing my son
for complaining about the mistreatment of him and other children there. I submit
such conduct on part of you and any other official of Glen Mills School that
punishes my son for reporting the mistreatment of the children there is
illegal and unconstitutional. I have been advised my sons "bull status" has
been taken, and he was required to visit his mother and grandmother there only
with a third party present, same done in retaliation for his complaints
regarding the mistreatment of him and other children under your care and
custody. I have also been advised that because my son made such complaint, you
and Glen Mills School officials intend to further retaliate by giving him an
unfavorable recommendation at his next court review. This conduct is unlawful
and clearly in retaliation for my sons exercise of his First Amendment rights
secured by the U.S. Constitution. This letter is to fully put you and officials
at your institution on notice of its unconstitutional conduct, so later it
cannot be claimed, you were unaware that your conduct was illegal and
unconstitutional.

     The First Amendment of the U.S. Constitution forbids the "abridging the
freedom of speech, or of the press; or the right of the people (my son) to
peaceably assemble, and to petition the government for a redress of grievances."
U.S. Const. Amend. I. The First Amendment also protects communication with
official agencies. See: MERIWETHER VS. COUGHLIN, 879 F.2d 1037, 1046 (1989)
(correspondence with state officials and public interest organizations protected
by First Amendment); FRANCO VS. KELLY, 854 F.2d 584, 589-90 (1988)(cooperation
with Inspector General investigating staff misconduct protected by First
Amendment); FRAZIER VS. KING, 873 F. 2d 820, 825-27 (1989)(nurses disclosure

Mr. Larry Laurence
May 3, 2002
Page Two

to State Nursing Board of violations for state nursing Standards in informary is constitutionally protected), cert. denied, 110 S.Ct. 502 (1990). Persons in prison or other such facilities, like other individuals, have the right to petition the Government for redress of grievances which, of course, includes 'access to the courts for purpose of presenting their complaints'. CRUZ VS. BETO, 405 U.S. 319, 321 (1972); and BOUNDS VS. SMITH, 430 U.S. 817, 821 (1977). "The right of access to the courts must be freely exercisable without hindrance or fear of retaliation." See: MILHOUSE VS. CARLSON, 652 F.2d 371, 373-74 (1981); citing: FERRANTI VS. MORGAN, 618 F.2d 888, 891-92 (1980) and GARLAND VS. POLLEY, 594 F.2d 1220, 1222-23 (1979).

   Based upon the foregoing, in our jurisprudence, it is clear that my son as well as myself have a constitutionally protected right to file complaints, including civil suits for mistreatement of the children at your institution, and my sons right to seek redress thru the courts must be 'freely exercisable without hindrance or fear of retaliation, for his exercise of such protected right. As aforesaid, you and or officials of your School have taken clear acts of retaliation against my son exercing his constitutionally protected rights. Upon notice of suit being served upon your institution, his "bull status" was taken, to hinder him from further complaining and advising his mother of further mistreatement at your school, you placed another child in your custody to sit in on such visit on April 28, 2002, which was further done in retaliation, and lastly, you and/or officials at your institution have advised my son he would not receive a favorable recommendation for the court at his upcoming Review proceeding. All of which constitute retaliation, which is unlawful, and violation of rights secured by the U.S. Constitution.

   At this time, demand is hereby made this the foregoing type of retaliation, harassment and punishment of my son for his exercise of his First Amendment rights cease immediately. By copy of this demand, your superior is being put at notice.

   I am currently preparing the Civil Rights Complaint, and Motion For an Emergency Injunction for filing with the United States District court For The Eastern District of Pennsylvania, to assure that this retaliatory action will not continue, wherein I will be specifically setting forth a claim for retaliation, for the above noted conduct of your institution towards my son since served the Notice of Intent. I will not tolerate either mistreatement of my son, any children under your care, or retaliation for proceeding in this matter.

   I thank you for your time and attention int his matter.

                                        Sincerely,

                                        _James S. Pavlichko Sc._
                                        JAMES S. PAVLICHKO, SR.

cc: Pa. Dept. of Public Welfare
    Superintendent/Director, Glen Mills
    School
    File X2

## CERTIFICATE OF SERVICE

I, Matthew A. Hamermesh, hereby certify that, on December 24, 2002, I caused a true and correct copy of the foregoing Amended Complaint to be served on the following by overnight mail:

Guy Vilim
Gold & Vilim
1608 Walnut Street
Suite 1600
Philadelphia, PA  19151

/s/
Matthew A. Hamermesh