MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
BY: Kate S. McGrath, Esquire
I.D. #56082
BY: Edward M. Galang, Esquire
I.D. #80958
Suite 1002, One Montgomery Plaza
Norristown, PA 19401
(610) 292-4473

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES S. PAVLICHKO, SR.,<br>As guardian ad litem for a Minor Child,<br>JAMES S. PAVLICHKO, JR. | : Civil Action No. 02-CV-2889 |
| VS. | |
| GLEN MILLS SCHOOL,<br>COSIMO D. FERRAINOLA, DIRECTOR,<br>LARRY LAURENCE, COUNSELOR,<br>GREG FRAZIER, STAFF MEMBER,<br>JIM WELSH, STAFF MEMBER,<br>TODD DONAHUE, STAFF MEMBER,<br>T.J. GREEN, STAFF MEMBER,<br>MR. YANEZ, STAFF MEMBER | : JURY OF 12 DEMANDED |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants, Glen Mills School, Cosimo D. Ferrainola, Larry Laurence, Greg Frazier, Jim Welsh, Todd Donahue, T.J. Green and Nelson Yanez, by and through counsel, Marshall, Dennehey, Warner, Coleman & Goggin and Edward M. Galang, Esquire hereby files this Memorandum of Law in Support Defendants' Motion for Summary Judgement as follows:

## I. FACTS AND PROCEDURAL BACKGROUND

James Pavlichko, Sr. (hereinafter "Pavlichko, Sr.") filed this case on behalf of his son, James Pavlichko, Jr. (hereinafter "Pavlichko, Jr.") for conduct that occurred while Pavlichko, Jr.

was admitted to Glen Mills Schools (hereinafter "Glen Mills"). (See attached Amended Complaint as Exhibit "A"). Pavlichko, Sr. is currently serving a life sentence at the State Correctional Institute at Mahanoy, Pennsylvania after being convicted of first degree murder and conspiracy to commit first degree murder by the Honorable John E. Domalakes of the Schuylkill County Court of Common Pleas. On December 8, 1998, upon petition Pavlichko, Jr.'s biological parents, the Luzerne Court ordered that the custody of Pavlichko, Jr. be awarded to Michael and Mary Pavlichko. (See attached Order and Petition as Exhibit "B").

Pavlichko, Jr. has been in and out of juvenile detention facilities since June 1999. The Honorable Mark Ciavarella of the Luzerne County Juvenile Court adjudicated delinquent Pavlichko, Jr. for numerous crimes. Judge Ciavarella adjudicated delinquent Pavlichko, Jr. for the following: harassment (June 26, 1999); theft by unlawful taking (June 21, 1999 and June 23, 1999, and June 30, 1999); retail theft (November 21, 1999); theft by receiving stolen property (June 23, 1999 and November 21, 1999); criminal mischief (November 21, 1999); terroristic threats (November 29, 1999); and disorderly conduct (November 29, 1999). Judge Ciavarella committed Pavlichko, Jr. to Camp Adams Boot Camp from June 30, 1999 to August 18, 1999. After violating the terms of his probation, Pavlichko, Jr. was committed to Northwestern Academy Boot Camp on two occasions from March 7, 2000 to May 31, 2000 and from December 8, 2000 to July 23, 2001. After finding that Pavlichko, Jr. violated his probation again, Judge Ciavarella committed Pavlichko, Jr. to Glen Mills School from September 25, 2001 to June 17, 2001. After being discharged from Glen Mills, Pavlichko, Jr. was then placed at Vision Quest Boot Camp from July 10, 2002 to October 9, 2002. After being discharged from Vision Quest Boot Camp, Pavlichko, Jr. again violated his probation and was committed to Northwestern Intensive Treatment unit from December 10, 2002 to July 2003.

The Glen Mills Schools is the oldest residential school for court referred men in the country. The school consists of a 756-acre campus, 20 miles southwest of Philadelphia, Pennsylvania. Glen Mills accepts boys from the ages of 15 to 18 years old from all states. Glen Mills has approximately 880 students. Most of its students have been adjudicated delinquent by various juvenile courts around the country. The school is a private facility and is not operated by any state agencies. The school has a private board of directors that participates in the school's budget and policy-making decisions. Cosimo D. Ferrainola has been the Glen Mills Executive Director for over twenty-eight years. As Executive Director, he is involved in the day to day operation of almost every aspect of the school. However, he has reduced his involvement in with the school after suffering a stroke in October 2000. Since his stroke, Mr. Ferrainola delegated his authority to Garrison Ipock, Managing Director. (See Ferrainola Deposition at p. 57-L10 as Exhibit "C").

Generally, for a child to be admitted to Glen Mills, the child is first adjudicated delinquent by the juvenile court. The assigned judge, along with the juvenile's probation officer, determine whether Glen Mills is a suitable program for the child. The child's tuition is funded on a per diem basis from the county of the child's particular jurisdiction. (See Ferrainola Deposition at p. 45-L18 as Exhibit "C"). Upon a student's arrival at Glen Mills, a student is randomly assigned to a cottage, or dormitory. Each cottage consists of a staff that comprises of a team leader, an AM and PM senior counselor and several counselor/teachers. The team leader supervises the entire staff for each cottage. The senior counselor oversees the counselor/teachers that are directly involved in the students' daily activities. Additionally, the senior counselor keeps a student's juvenile probation officer apprised of the student's progress. Each student is

individually assigned a counselor from the cottage. The individual counselor is responsible for the monitoring of the child's progress at Glen Mills.

The Battling Bulls Club is Glen Mills' form of student government. The purpose of the Battling Bulls Club is to support pro-social behavior, encourage responsibility and facilitate personal growth. To become a member of the Battling Bulls Club, a student must demonstrate positive behavior, which includes the ability to confront other students, as well as, be confronted and to be a positive role model. A student goes through a pledge process where they must actively confront other students they observe engaging in negative behavior. After a student completes the pledge process, they may obtain "Bull" status and become a member of the Battling Bulls Club. Members of the Battling Bulls Club enjoy privileges that nonmembers cannot enjoy. (See Glen Mills Student Handbook at p. 23 as Exhibit "D").

Students at Glen Mills have opportunities for home passes, visitation and telephone privileges. Home passes are granted to students at the discretion of their counselor, senior counselor and/or team leader. Before granting a home pass, a student must complete the required time period as stipulated to him by his jurisdiction. Home passes are issued based upon factors such as regulations and/or agreements with the jurisdiction, student behavior and parental/guardian permission. Visitation at Glen Mills is open to parents, guardians and grandparents unless prohibited by court order. A student's individual counselor makes the visitation arrangements with respect to a particular student. Students are also permitted to use pay phones located in the student union. The telephones in the student union are available thirty-seven hours per week during the normal operation of the Student Union. At the discretion of the student's individual counselor, a student may utilize a telephone located in the particular unit.

With regard to mail privileges, students are provided with writing materials and free postage for the purposes of sending mail. The practice of collecting student letters for mailing varies from unit to unit. The practice for delivery of arriving mail also varies. The following are uniform practices throughout the entire school regarding mail:

1. Each student may receive and send mail. There shall be no charge to the student to mail letters.
2. Outgoing mail shall not be opened or ready by staff persons except in the existence of a written court order so authorizing.
3. Incoming mail from Federal, State or county officials, or from the student's attorney, shall not be opened or read by staff persons.
4. Incoming mail from others shall not be opened or read by staff persons. If there is a reasonable suspicion that contraband, or other information or material that may jeopardize the student's health, safety or well being, enclosed in the letter or package, the letter/package shall be opened in the presence of a staff person.

(Glen Mills Student Handbook at p. 45 as Exhibit "D").

Glen Mills has implemented a Staff Behavioral Management Program in order to address a student's negative behavior. The Behavioral Management Program consists of five de-escalation techniques. If the five de-escalation techniques fail in motivating a student to change their behavior from positive to negative, a manual assist may be used. If the student then becomes a threat to himself and/or others, a physical restraint may be utilized. The Staff Behavioral Management Program consists of the following:

**De-escalation Technique # 1 Friendly Non-Verbal**

The Friendly Non-Verbal is first in the order of Behavior Intervention. When a staff member observes a student who is involved with a problem they will give this student a helpful non-verbal gesture. These gestures are made with the eyes, hands, head or other body parts. These gestures are used to change the behavior of this student at the immediate time of the problem. Non-verbals given with empathy are given to effect change. If after a helpful non-verbal is given the student does not change their behavior a non-verbal given with concern is the next technique utilized.

**De-escalation Technique # 2 Concern Non-Verbal**

After the student has not responded to the helpful non-verbals, the next form of Behavioral Intervention is a concerned non-verbal. This can be done by staff through stern and forceful facial gestures, hand gestures or other non-verbal gestures. These non-verbals are used in order to change behavior or actions of a student at a particular time. If a student does not respond to this level of intervention, a helpful verbal technique will be used.

**De-escalation Technique #3 The Helpful Verbal**

When a student is unable to read the concerned non-verbal, the next level would be the helpful verbal. At this time, staff would verbally communicate, in a cordial manner their concern with the student involved in the incident.

**De-escalation Technique #4 Concern Verbal**

After a student who has been given a helpful verbal concerning his negative actions and disregards this, the next step of intervention would be a concern verbal. The concern verbal given by staff would inform the student in question that his actions are fast becoming a major concern to that staff member. Intervening staff would accomplish this by using different voice levels, facial expressions, and non-physical actions.

**De-escalation Technique #5 Staff Support**

Support is requested when the student ignores the concern verbal. This is used to alert the student that his actions have reached a high level of concern. This is done by enlisting staff support. Staff support is given through both non-verbal and verbal communications such as different voice levels and facial expressions. In addition, supporting staff also observe to ensure that all staff act professionally and prepare the physical environment to ensure safety in the event that the student becomes a threat to injure himself or others.

**Manual Assist**

In the event that the first five de-escalation techniques fail in motivating the student to change their behavior from negative to positive, a manual assist may be used. The sole purpose of the manual assist is to provide the student with a final attempt to gain self-control. The manual assist shall be conducted by staff placing their hands on the student’s arm or shoulder area only and shall not exceed one minute. The purpose for this is to communicate to the student that their behavior is becoming a major concern to staff. The student’s response will determine if the intervention will be de-escalated or if a restrictive procedure is necessary. If at any time during the manual assist the student becomes out of control and a threat to himself and/or others, a restrictive procedure will be utilized.

**Physical Restraint – Staff Only**

> If all De-escalation Techniques have failed and the student becomes a threat to himself and/or others, it is the responsibility of those involved to hold the young man until he appears to settle down. The staff's primary objective is to hold that young man and keep him safe and under control. The restraining staff will use the least amount of force as possible until the student is no longer out of control or a threat to himself or others. At this time, staff will take this opportunity to talk to the student and use the incident to help the student mature and grow.

(See Glen Mills Student Handbook at p. 41-43 as Exhibit "D").

Every student at Glen Mills has a right to lodge a grievance, without fear of retaliation if any of the student's rights has been violated. The student has many options in which to express his grievances through the school's Student Grievance Process. Under this process, the student first may discuss a grievance with a peer. A peer may be able to help resolve a student's grievance by giving positive feedback individually or through group interaction. Another way a student can express his grievances is through his individual cottage counselor. Under the Student Grievance Process, this must be done within five days of the date when the student's rights may have been violated. If the individual counselor cannot resolve the grievance, the student may express his complaints up the chain of command in supervisors. The student can then express his grievance with the Senior Counselor, then to the Team Leader, then to the Group Living Director, then to the Managing Director, then to the Executive Director. If the student cannot resolve his grievance using this process, the student will have the opportunity to discuss his grievances with his probation officer. (See Glen Mills Student Handbook at p. 37-38 as Exhibit "D").

On September 25, 2001, Judge Ciavarella issued an order committing Pavlichko, Jr. to Glen Mills. Upon his arrival at Glen Mills, Mr. Pavlichko was assigned to live in Taylor Hall. Taylor Hall is a three-story building that houses approximately sixty to eighty-five students.

Anthony Bacon served as the Team Leader of Taylor Hall during Plaintiff's admission. Greg Frazier served as the AM Senior Counselor and Larry Lawrence was Plaintiff's individual counselor.

Before, April 2002, Pavlichko, Jr.'s admission at Glen Mills had been unremarkable. However, on or about April 11, 2002, Mr. Pavlichko broke the school's 12:00 AM to 8:00 AM rule. During this time period, students are required to stay in their bed. There is no dispute that Mr. Pavlichko violated this rule. During his deposition, Mr. Pavlichko admitted to breaking this rule. See Pavlichko, Jr. Deposition at p. 29-L22 as Exhibit "E". Another student, Joe Franz observed Pavlichko, breaking the rules because he was out of his bed listening to a radio. Franz then reported his observations to the night staff. The night staff on duty during this evening was Ed Norman, the PM Senior Counselor, and counselor/teachers T.J. Green, Chris Johnson, and Dan McClain. Because Pavlichko, Jr. was violating school rules, Mr. Green confronted Pavlichko. During the confrontation, Mr. Green inquired why Pavlichko, Jr. was out of his bed. Plaintiff then became very belligerent. As a result, Mr. Green performed a manual assist of Pavlichko. (See Green Deposition at p. 24-L6 as Exhibit "F"). Mr. Pavlichko did not sustain any injuries as a result of the manual assist. Pavlichko, Jr. Dep at p. 56-L17 as Exhibit "E". He did not seek any medical attention. After the manual assist, Mr. Green and Pavlichko never came into contact with one another. (See Pavlichko, Jr. Dep at p. 64-L4 as Exhibit "E").

On or about April 16, 2002, Pavlichko, Sr. wrote a letter addressed to the Superintendent/Director of Glen Mills. In this letter, Pavlichko, Sr. enclosed a Notice of Intention, regarding prospective litigation against Glen Mills. In this correspondence, Pavlichko, Sr. complains of alleged abuse to his son and other students at Glen Mills. Plaintiff sent copies of this letter to Judge Ciavarella, the Department of Public Welfare and the Pennsylvania State

Police. On May 2, 2002, Pavlichko, Sr. wrote another letter addressed to Defendant, Mr. Ferrainola. In this letter, Pavlichko, Sr. stated that his son’s legal mail was being seized and confiscated by Glen Mills staff. Since Defendant, Mr. Ferrainola did not play an active role in the daily operation of the school, Glen Mills Managing Director, Garrison Ipock took action on Pavlichko, Sr.'s complaints. Mr. Ipock discussed the contents of Pavlichko, Sr.'s complaints with the school's Group Living Director, Thomas Mann. Mr. Mann discussed the issues with Taylor Hall team leader, Anthony Bacon, only to learn that there was no merit to Pavlichko, Sr.'s complaints.

On May 3, 2002, Pavlichko, Sr. wrote a letter to Plaintiff’s individual counselor, Larry Lawrence. In this letter, Pavlichko, Sr. complained that his son’s “Bull” status was removed in retaliation of filing the Notice of Intent. Pavlichko, Sr. also complained that his son’s visitation was improperly supervised by staff on April 28, 2002. Pavlichko, Sr. further complains that his son would not receive a favorable recommendation at his next review hearing before Judge Ciavarella. At no time did Pavlichko, Jr. utilize the school’s formal Student Grievance Process despite his awareness of it. See Acknowledgment of Receipt as Exhibit "G", Pavlichko, Jr.'s Deposition at p. 93-L18 as Exhibit "E". At no time did the Michael and Mary Pavlichko, Plaintiff’s legal guardians express any complaints about Pavlichko, Jr.’s treatment at Glen Mills. After Plaintiff received copies of the mail from his father, he began to become disruptive in the unit by telling other students that he was “untouchable”.

On May 14, 2002, Plaintiff was transferred from Taylor Hall to Tyler Hall. Before the transfer, Anthony Bacon, Taylor Hall’s team leader approached the Defendant, James Welsh, Tyler Hall’s team leader. Defendant Welsh accepted Plaintiff as a transfer to Tyler Hall. The

purpose of the transfer was due to Plaintiff having difficulty with his peers and to obtain a "fresh start" in a new cottage.

On June 17, 2002, Judge Ciavarella scheduled a review placement hearing in the Luzerne County Juvenile Court. At the hearing, Judge Ciavarella decided to remove Plaintiff from Glen Mills. Plaintiff alleges that all Defendants conspired with Judge Ciaverella in having Plaintiff removal from Glen Mills. Only Defendant, Nelson Yanez has been in direct communication with Judge Ciavarella. Mr. Yanez has never communicated with Judge Ciavarella concerning Plaintiff outside of a courtroom setting.

Due to Pavlichko, Sr.'s complaints about Glen Mills, the Department of Public Welfare (hereinafter "DPW") conducted an investigation to determine the validity of the allegations of abuse by Defendant, T.J. Green. After conducting its investigation, which included an interview with Pavlichko, Jr., the DPW concluded that Pavlichko's claims were unfounded. The investigation revealed that Plaintiff's allegations of physical abuse cannot be substantiated. The investigation further revealed that Plaintiff did not suffer severe pain, nor was his physical functioning temporarily or permanently impaired. See Department of Public Welfare Documentation as Exhibit "H".

Plaintiff commenced this cause of action on or about June 6, 2002. On July 9, 2002, the Honorable William H. Yohn, Jr. appointed Pavlichko, Sr. as guardian ad litem. On August 27, 2002, Defendants, Ferrainola, Lawrence and Glen Mills filed a Motion to Dismiss Plaintiff's Complaint, which the court granted on October 2, 2002. On October 11, 2002, Pavlichko, Sr. filed an Amended Complaint, which was dismissed as moot by Judge Yohn. On November 26, 2002, upon Pavlichko, Sr.'s Motion, Judge Yohn vacated the October 1, 2002 Order dismissing Plaintiff's Complaint. On December 24, 2002, Plaintiff filed another Amended Complaint.

Count I of Plaintiff's Amended Complaint alleges Retaliation pursuant to 42 U.S.C. § 1983. Count II of Plaintiff's Amended Complaint alleges Conspiracy against Defendants pursuant to 42 U.S.C. § 1983. Count III of Plaintiff's Amended Complaint alleges a violation of the Eighth Amendment of the United States Constitution against Defendant, T.J. Green. Counts IV and V of Plaintiff's Amended Complaint allege state law claims of assault and battery against Defendant, T.J. Green. Count VI of Plaintiff's Amended Complaint alleges assault and battery against Defendants, Glen Mills Schools and Cosimo D. Ferrainola under the theory of *respondeat superior*. Defendants file this Motion for Summary Judgment and respectfully request that any and all claims against all Defendants shall be dismissed with prejudice pursuant to Fed.R.C.P. 56.

## II. LEGAL ARGUMENT

### A. STANDARD OF REVIEW

Fed.R.C.P. 56(c) provides that "summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the Affidavits, if any, show that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law". The Supreme Court has recognized that the moving party "bears the initial responsibility of informing the District Court of the basis for its motion, and identifying those portions…which it believes demonstrate the absence of a genuine issue of material fact". Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has filed a properly supported motion, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial". Fed.R.C.P. 56(e). The non-moving party may not rest upon the mere allegations or denials of the parties pleading.

If the record taken as a whole in a light most favorable to the non-moving party, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial". Matsushita Elec. Company v. Zenith Radio, 475 U.S. 574, 587 (1986). If the evidence for the non-moving party is merely colorable, or if it is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

**B. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. §1983 MUST BE DISMISSED**

To establish a claim under §1983, Plaintiff must allege 1) a deprivation of a federally protected right; and 2) commission of the deprivation by one acting under color of state law. Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997). First, Plaintiff has failed to demonstrate a deprivation of a federally protected right. Second, Glen Mills is not a state actor for the purposes of Section 1983. As a result, Plaintiff's Section 1983 claims must be dismissed.

**1. Plaintiff's have failed to show the deprivation of a federally protected right.**

The initial question in a §1983 action is whether there has been a deprivation of a constitutional right. Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003). Here, Plaintiff has failed to show the deprivation of a constitutional right. For the reasons set forth in Section D of this Memorandum of Law, Defendants submit that Plaintiff has failed to demonstrate a First Amendment Retaliation claim. Additionally, this is not a case where Plaintiff has been prevented from filing suit, nor has his access to this Court been rendered ineffective or meaningless. see Millhouse v. Carson, 652 F.2d 371 (3d Cir. 1981). In Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997), the court considered and rejected a claim that a practice of reading an inmate's mail, even mail received or sent directly to or from a court, did not establish a constitutional violation where there is no actual injury, such as the loss or rejection of a legal

claim. The mere practice of reading the mail was insufficient to trigger First Amendment protections and Section 1983 liability.

Here, the record demonstrates that the Plaintiff kept his mail in a personal file. The record further demonstrates that at no time did Glen Mills staff confiscate Plaintiff's mail. There is no evidence that Plaintiff suffered actual injury, such as the loss or rejection of a legal claim. Further, the papers are not the kind of "legal papers" (i.e., papers received directly from an attorney or a court, that courts have recognized as falling within the framework of the First Amendment's protection. Bieregu v. Reno, 59 F.3d 1445, 1448 (3d Cir. 1995) overruled on other grounds, Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997). Also, there is nothing in the record that Pavlichko, Jr., his parents, his probation officer, or any other properly authorized person did not have full and complete access to the papers, even if they were taken from his person and even if they were retained by Glen Mills staff in Plaintiff's general file. There is nothing to demonstrate that Plaintiff lost any legal claim or suffered the kind of injury to prevail in a Section 1983 claim.

Additionally, Plaintiff alleges that the presence of staff or another student during an April 28, 2002 visit by his mother and grandmother gives rise to a Section 1983 claim. There is no legal authority for the implied assertion that the Constitution guarantees a right to entirely private, unmonitored visits by his family members because no such right exists. Furthermore, there is no evidence in the record to demonstrate that Plaintiff suffered any type of actual injury during this visit.

Moreover, Plaintiff alleges that he was improperly discharged from Glen Mills after his June 17, 2002 placement review hearing. There is no legal authority that stands for the proposition that an individual adjudicated delinquent by the courts is entitled under the Constitution to remain in a privately run juvenile facility, such as Glen Mills. There is no

evidence to suggest that Plaintiff suffered any type of injury to give rise to a deprivation of a federally protected right. Because Plaintiff has failed to show the deprivation of a federally protected right, Plaintiff's Section 1983 claims must be dismissed.

**2. Plaintiff has failed to demonstrate state action.**

There is nothing in the record to show that Glen Mills performs functions that had been "traditionally the exclusive prerogative of the state." Robert S. v. Stetson School, Inc., 256 F.3d 159 (3d Cir. 2001). A private contractor does not become a state actor in this context merely by working as a subcontractor to a government agency, nor by being regulated in some way by the state, nor by providing a service that the government also sometimes provides, such as education. There is no evidence in the record to demonstrate that Glen Mills is performing a task that had been the exclusive province of the state, and the mere fact that Glen Mills performs a function which serves the public does not make its acts state action. Id. at p. 161, quoting Rendell-Baker v. Kohn, 457, U.S. 830, 842 (1982).

Glen Mills is a private entity whose contact with the government is through a subcontractual relationship. Like Stetson, students are sent to Glen Mills pursuant to juvenile court orders issued under the Pennsylvania Juvenile Act, 42 Pa.C.S.A. §§ 6301, et seq. And not under criminal statutes or mental health commitment laws. Like Stetson, Glen Mills students are not considered "involuntary" for Section 1983 purposes even if they may not simply leave the campus without permission or adult supervision. As a result, Glen Mills cannot be viewed as a state actor as a matter of law and Plaintiff's Section 1983 Claims must be dismissed.

**C. ALL CLAIMS AGAINST DEFENDANT, COSIMO D. FERRAINOLA MUST BE DISMISSED.**

Defendant, Cosimo D. Ferrainola serves as the Executive Director of Glen Mills. All claims against Mr. Ferrainola must be dismissed because he had no personal involvement in the

Plaintiff's admission at Glen Mills. A defendant in a civil rights case must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Baker v. Monroe Township, 50 F.3d 1186 (1995); Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988). Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence. Rode, 845 F.2d 1207.

The record is completely devoid of any evidence that Mr. Ferrainola was personally involved in this case in any way. Mr. Ferrainola suffered a stroke in October 2000 and limited his day to day responsibilities as the Executive Director of Glen Mills. He delegated his responsibilities to Managing Director, Garrison Ipock. Upon receipt of Pavlichko, Sr.'s complaints, Mr. Ipock was authorized to take appropriate action. Mr. Ferrainola never personally came into contact with James Pavlichko, Jr.. (See Pavlichko, Jr. Deposition at p. 121-L19). He had no knowledge of the incident involving T.J. Green. Mr. Ferrainola had no knowledge of Plaintiff's complaints concerning his bull status, home passes, telephone privileges and visitation. Mr. Ferrainola had nothing to do with Plaintiff's transfer from Taylor Hall to Tyler Hall. In fact, he had no role in the Plaintiff's stay at Glen Mills in any way. As a result, all claims against Defendant, Cosimo D. Ferrainola must be dismissed with prejudice.

**D. PLAINTIFF HAS FAILED TO DEMONSTRATE A FIRST AMENDMENT RETALIATION CLAIM UNDER SECTION 1983.**

Although Plaintiff's Complaint does not expressly allege a First Amendment retaliation claim, Defendants anticipate their attempt to rely on this theory of liability. In order to prove that Defendants violated Plaintiff's First Amendment rights by retaliating against him for complaining to various governmental agencies, Plaintiffs must show: (1) that Pavlichko, Jr. engaged in protected activity; (2) that Glen Mills employees responded with retaliation; and (3) that the protected activity was the cause of the retaliation. Estate of Smith v. Marasco, 318 F.3d

497, 512 (3d Cir. 2003). Plaintiff cannot establish these elements, therefore Count I of Plaintiff's Complaint must be dismissed.

The alleged protected activity at issue is correspondence written by James Pavlichko, Sr., who was not the legal guardian of Pavlichko, Jr. On December, 8, 1998, the Luzerne County Court issued an order awarding legal custody to Plaintiff's parental grandparents. Generally, a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of others. First Amendment rights are personal to an individual. In determining whether Pavlichko, Jr. can obtain First Amendment relief for conduct engaged by his father, the court must look to three factors. First, the court must examine the relationship between the plaintiff and the third party whose rights are asserted. Second, the court must consider the ability of the third party to advance his own rights, i.e., whether some obstacle impedes the rightholder's own suit. Third, the court must inquire into the impact on the third parties. Amato v. Wilentz, 952 F.2d 742 (3d Cir. 1991); Serena H. v. Kovarie, 209 F. Supp. 2d 453 (E.D. Pa. 2002).

At the time Pavlichko, Sr. communicated his complaints against Glen Mills to the various state agencies, he was incarcerated at the State Correctional Institute at Graterford as a result of a first-degree murder conviction. Michael and Mary Pavlichko, Plaintiff's grandparents were awarded legal custody of Plaintiff. There was nothing to impede Plaintiff's true legal guardians from asserting Plaintiff's rights during his admission at Glen Mills. In fact, discovery reveals that Michael and Mary Pavlichko supported Glen Mills in their treatment of the Plaintiff. There was nothing to impede Pavlichko, Jr. himself from complaining about his treatment at Glen Mills pursuant to Glen Mills' Student Grievance Process. Under this Grievance Process, Plaintiff could have expressed his concerns with his peers. Plaintiff could then express his concerns to his

individual cottage counselor, Senior Counselor, Team Leader, Group Living Director, the Managing Director or his probation officer. Plaintiff knew of this Grievance Process, but chose not to utilize the process to express his complaints. See Acknowledgment of Receipt as Exhibit "G", Pavlichko, Jr.'s Deposition at p. 93-L18 as Exhibit "E". Therefore, Defendants submit that Pavlichko, Jr. himself did not engage in any type of protected activity. As a result, Plaintiff's retaliation claims under the First Amendment must be dismissed.

Moreover, the record is devoid of evidence to demonstrate that each individually named defendant retaliated against Plaintiff. There are no allegations in Plaintiff's Complaint, and the record contains no evidence that T.J. Green retaliated against Plaintiff in any way. Plaintiff even stated that he never came into contact with Mr. Green after the April 11, 2002 "manual assist". As a result, Count I of Plaintiff's Complaint must be dismissed as to T.J. Green.

In Paragraph 27 of Plaintiff's Complaint, Plaintiff alleges that in retaliation for Pavlichko, Jr. requesting an investigation from various state officials, defendants Ferrainola, Laurence and Yanez contacted the Probation Department of the Juvenile Court of Luzerne County and requested that James be removed from Glen Mills. There is no evidence in the record to suggest that Defendants, Ferrainola, Lawrence and Yanez engaged in such conduct. Neither Larry Lawrence nor Mr. Ferrainola even communicated with the Luzerne County juvenile probation department concerning Plaintiff. During his deposition, Mr. Yanez testified that he never requested that Plaintiff be removed from Glen Mills. It was within the authority of Judge Ciavarella to determine whether Plaintiff should be removed from Glen Mills.

In Paragraph 28 of Plaintiff's Complaint, Plaintiff alleges that in retaliation for Pavlichko, Sr.'s complaints, Defendants Ferrainola directed James Welsh to remove Plaintiff's "Bull Status." "Bull status" is a rating assigned by Glen Mills for juveniles for good behavior while committed

there. Plaintiff further alleges that the removal of "Bull Status" results in a significant restriction on a juvenile's rights and privileges. There is no evidence in the record that Defendant, Mr. Ferrainola made such a directive. In fact, there is nothing in the record to indicate that Mr. Ferrainola was involved in Plaintiff's admission at Glen Mills in any way. Additionally, there is no evidence that Defendant, James Welsh removed Plaintiff's bull status.

In Paragraph 29 of Plaintiff's Complaint, in retaliation for Pavlichko, Sr.'s complaints to various agencies, Plaintiff alleges that Todd Donahue took away his home pass status. This is the sole allegation against Defendant, Donahue. The record clearly indicates that Mr. Donahue did not even have the authority to take away Plaintiff's home passes. The record indicates that Mr. Donahue was a counselor/teacher in Taylor Hall during Plaintiff's admission at Glen Mills. The record reveals that the individual counselor first makes the recommendation whether a student should receive a home pass. The counselor's recommendation related to home passes is reviewed and approved or disapproved by the AM Senior Counselor and the team leader. Defendant, Todd Donahue took no role whatsoever in Plaintiff's home pass status. (See Donahue Deposition at p. 49-L12 as Exhibit "I"). It is clear that Mr. Donahue was improperly named as a defendant in this case because he simply worked in the same cottage Plaintiff was housed. There is simply no evidence to support any wrongdoing by Mr. Donahue and all claims against Mr. Donahue should be dismissed.

In Paragraph 30 of Plaintiff's Complaint, Plaintiff alleges that Larry Lawrence retaliated against Plaintiff ordering that Plaintiff be moved from Taylor Hall to Tyler Hall. Plaintiff alleges that Tyler Hall affords juveniles with significantly few rights and privileges than Taylor Hall. First, the record is devoid of any evidence that Mr. Lawrence ordered that Plaintiff transfer from Taylor Hall to Tyler Hall. In fact, Plaintiff was transferred to Tyler Hall because he had

difficulty with his peers and Anthony Bacon, Taylor Hall team leader felt it was appropriate that Plaintiff obtain a "fresh start" in a new cottage. Further, there is nothing in the record to indicate that Tyler Hall is more restrictive than Taylor Hall. There is nothing to indicate that Plaintiff was punished in any way by the transfer to Tyler Hall.

In Paragraph 31 of Plaintiff's Complaint, Plaintiff alleges that Larry Lawrence threatened to give Plaintiff an unfavorable recommendation to Judge Ciavarella at his next Placement Review Hearing. There is nothing in the record to support this contention. In fact, the record demonstrates that Mr. Lawrence participates in drafting a Comprehensive Report that advises the court of Plaintiff's progress. None of the Comprehensive reports recommends that Plaintiff should be discharged from Glen Mills.

In Paragraph 33 of Plaintiff's Complaint, Plaintiff alleges that Defendant, Greg Frazier retaliated against Plaintiff by seizing and confiscating his mail. However, the record demonstrates that Plaintiff voluntarily kept his mail in his personal file in Taylor Hall. As previously stated above, the court considered and rejected a claim that a practice of reading an inmate's mail, even mail received or sent directly to or from a court, did not establish a constitutional violation where there is no actual injury, such as the loss or rejection of a legal claim. The mere practice of reading the mail was insufficient to trigger First Amendment protections and Section 1983 liability. Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997)

In Paragraph 34 of Plaintiff's Complaint, Plaintiff alleges that Defendants, Ferrainola and Lawrence directed that a staff member and another juvenile supervised an April 28, 2002 visit between Plaintiff and his mother and grandmother. There is no evidence in the record to support the contention that Defendants Ferrainola and Lawrence committed such acts.

Any conduct related to the Plaintiff was not the result of any retaliation of Defendants. In this case, the record shows that the Plaintiff engaged in negative behavior after his father complained to the various state agencies. He began to tell other students that he was "untouchable" and staff felt that Plaintiff was beyond confrontation. Defendants submit that Plaintiff cannot disrupt the operation of Glen Mills simply because his father complained to various state agencies. Plaintiff lost his bull status because he had difficulty with his peers and staff. He was transferred from Taylor Hall to Tyler Hall in order to have another chance in establishing himself in the Glen Mills system. There is simply no evidence in the record to support Plaintiff's contention of retaliation. For these reasons, Count I of Plaintiff's Complaint must be dismissed with prejudice.

**E. COUNT II ALLEGING CONSPIRACY MUST BE DISMISSED.**

In Count II of the Complaint, Plaintiff alleges that all Defendants engaged in a conspiracy with the Honorable Mark Ciavarella of the Luzerne County Court of Common Pleas. In order to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. General Refractors Co. v. Fireman's Fund Insurance Co., 2003 U.S. App. Lexis 14867 (3d Cir. 2003). Furthermore, proof of malice is required in a successful civil conspiracy claim. Levin v. Upper Makefield Twp., 2003 U.S. Dist. Lexis 3213 (E.D. Pa. 2003); Thompson v. Coal Co. v. Pike Coal Co., 488 Pa. 198, 211, 412 A.2d 466, 472 (1979); Scully v. US WATS, Inc., 238 F.3d 497, 516 (3d Cir. 2001).

Specifically, Plaintiffs allege that Defendants conspired with Judge Ciavarella to undertake adverse actions against James Pavlichko, Jr. in retaliation for Plaintiff's

constitutionally protected conduct. The only named defendant to actually come into any type of contact with Judge Ciavarella is Glen Mills' court liaison, Nelson Yanez. As a result, Count II of Plaintiff's Complaint must be dismissed as to Defendants, Mr. Ferrainola, T.J. Green, Todd Donahue, Larry Lawrence, James Welsh or Greg Frazier. Additionally, a conspiracy cannot exist between the corporate defendant, Glen Mills. Therefore, Count II must also be dismissed at to defendant, Glen Mills.

In Paragraphs 42 through 47 of the Complaint, Plaintiff alleges that Judge Ciavarella was involved in an illegal conspiracy with Glen Mills. Judge Ciavarella is not a named party in this matter. Judge Ciavarella is juvenile court judge in Luzerne County Court of Common Pleas assigned to all of Mr. Pavlichko's juvenile placements both before and after the admission to Glen Mills. There is absolutely no evidence in the record, and no evidence exists to show that Judge Ciavarella had knowledge and intent to discharge Plaintiff from Glen Mills to be remanded to the Luzerne County Detention Facility in retaliation to Pavlichko, Sr.'s complaints. See Paragraph 44 of the Complaint. There is absolutely no evidence that committed the Plaintiff to Vision Quest with knowledge and intent to do so in response to Pavlichko, Sr.'s request for an investigation with various state agencies. See Paragraph 46 of Plaintiff's Complaint. The record is clear that Nelson Yanez has not even communicated with Judge Ciavarella regarding Pavlichko, Jr. outside of the placement hearings in March 2002 and June 17, 2003. For these reasons, Count II of Plaintiff's Complaint must be dismissed in its entirety with prejudice.

**F. <u>COUNT III OF PLAINTIFF'S COMPLAINT ALLEGING AN EIGHTH AMENDMENT VIOLATION MUST BE DISMISSED</u>.**

First, Plaintiff there is no law that establishes that a minor juvenile residing in a private institution enjoys the same right to sue under Section 1983 as do convicted and incarcerated

inmates under Stetson, supra. Therefore, Defendants submit that the Eighth Amendment is inapplicable to this case. Even if Plaintiff is treated the same as a prison inmate for the purposes of Section 1983, this court must determine whether the actions of T.J. Green constituted excessive force in violation of the Eighth Amendment. In making this determination, courts look to the following factors:

> (1) the need for the application of the force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 321, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986)). The central question in such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 7, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992)).

Here, there is nothing in the record that T.J. Green's conduct was anything but a good-faith effort to maintain or restore discipline in Tyler Hall on April 11, 2002. Here, T.J. Green manually assisted James Pavlichko, Jr. Under the Glen Mills Student Handbook, the sole purpose of a "manual assist" is to provide the student with a final attempt to gain self-control. Mr. Green's deposition testimony indicates that Plaintiff became very belligerent immediately before the manual assist. There is nothing in the record to show that Mr. Green maliciously and/or sadistically caused harm to Plaintiff. Plaintiff even testified that he did not sustain any type of injury. James did not feel any pain or suffer any injuries. (Pavlichko, Jr.'s deposition at p. 58). There is no evidence to show that Mr. Green used force on Plaintiff in a malicious and sadistic effort to injure him. The contact between Mr. Green and Plaintiff lasted only a few seconds and the situation was diffused shortly thereafter. As a result, there is nothing in the

record to demonstrate an Eighth Amendment violation and Count III must be dismissed as a matter of law.

### G. PLAINTIFF'S ASSAULT AND BATTERY CLAIMS AGAINST T.J. GREEN MUST BE DISMISSED.

Counts IV and V of Plaintiff's Complaint allege the state law claims of assault and battery. Because summary judgment should be granted in favor of Defendants on all of Plaintiff's Section 1983 claims, Defendant, T.J. Green respectfully request that the supplemental state tort law claims be dismissed pursuant to 28 U.S.C. § 1367 (c)(3). Additionally, there is insufficient evidence in the record to establish the claims of assault and battery. Under Pennsylvania law, assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person. Renk v. City of Pittsburgh, 537 Pa. 68, 76, 641 A.2d 289, 293 (1994).

Pavlichko, Jr. admitted that he violated the school "light's out" rules by listening to a radio. The record is devoid of any evidence that T.J. Green intentionally attempted by force to injure Plaintiff in any way. Further, there is no evidence Plaintiff sustained any type of injury. Plaintiff testified that he did not feel any pain or suffer any injuries during his encounter with Mr. Green. (Pavlichko, Jr.'s deposition at p. 58). In fact, The Pennsylvania Department of Public Welfare conducted an investigation of the incident with Mr. Green to determine the validity of Pavlichko's allegations of abuse. The Department concluded that Pavlichko's claims were unfounded. Therefore, based upon the evidence in the record, Plaintiff's assault and battery claims must be dismissed with prejudice. Additionally, for these reasons, Count VI of Plaintiff's Complaint should also be dismissed.

**H. PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES MUST BE DISMISSED.**

Plaintiff seek punitive damages against all Defendants. Likewise, because official capacity suits are in effect suits against the governmental entity, punitive damages are not available against an officer in his or her official capacity. Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988). Accordingly, Plaintiffs claim for punitive damages against Defendants in their official capacity should be dismissed with prejudice.

Although punitive damages are not available against the municipal entities and against the defendants in their official capacity, plaintiffs may seek punitive damages against defendants in their individual capacity. Under Section 1983, "in order to obtain such damages, plaintiff must establish facts of record that prove that the individuals knowingly and maliciously deprived plaintiffs of their civil rights." Ruiz v. Philadelphia House. Auth., 1998 U.S. Dist. LEXIS 3925, (E.D.Pa. March 17, 1998) . The Third Circuit has stated that:

> "for a plaintiff in a § 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard."

Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989).

The Supreme Court of Pennsylvania has adopted the Restatement (Second) of Torts, § 908(2), which permits damages for "conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. Rizzo v. Haines, 520 Pa. 484, 555 A.2d 58, 69 (Pa. 1989) (quoting Rest. (2d) Torts § 908(2)). The proper focus is on "the act itself together with all the circumstances including motive of the wrongdoer and the relations between the parties..." Rizzo, 520 Pa. at 555. Further, a court may award punitive damages only if the conduct was malicious, wanton, reckless, willful, or oppressive." Id.

It is clear from all of the evidence that none of the Defendants engaged in any

conduct that would subject him to a damage award, let alone acts sufficient to rise to the level of punitive damages. Therefore, Plaintiffs' claim for punitive damages should be dismissed with prejudice.

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Honorable Court grant this motion for summary judgment and dismiss any and all claims against all Defendants with prejudice.

RESPECTFULLY SUBMITTED:

MARSHALL, DENNEHEY, WARNER,
COLEMAN AND GOGGIN

BY: ________________________________
Edward M. Galang, Esquire
Attorney for Defendants
Glen Mills School, Cosimo D. Ferrainola,
Larry Laurence, Greg Frazier, Jim Welsh,
Todd Donahue, T.J. Green and Nelson Yanez

Date: ____________